# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KEIMARKUS WOODARD,

      **Plaintiff,**

            v.

DAVID WINTERS, *et al.,*

      **Defendants.**

Civil Action 2:16-cv-704
Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Keimarkus Woodard, an Ohio inmate proceeding without the assistance of

counsel, brings this civil rights action under 42 U.S.C. § 1983, alleging that Defendants,[1]

employees of Ross Correctional Facility ("RCI"), utilized excessive force against him and were

deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the

United States Constitution.  This matter is before the Court for consideration of Plaintiff's and

Defendants' cross Motions for Summary Judgment.  (ECF Nos. 70 and 80.)  Having considered

both Motions and all related briefing, it is **RECOMMENDED** that Defendants' Motion be

**GRANTED IN PART AND DENIED IN PART** and that Plaintiff's Motion be **DENIED**.  The

Court has also screened the claims upon which Defendants have not moved for summary

judgment pursuant to 28 U.S.C. § 1915(e), and further **RECOMMENDS** that Plaintiff's claim

for deliberate indifference to serious medical needs be **DISMISSED** pursuant to § 1915(e) and

that his excessive force claim premised upon Defendants' alleged failure to permit him to

---

[1] Plaintiff sues Defendants J. Elkins, J. Evans, Hunter Sexton, and Mr. Winters in both their official and personal capacities.  (Pl.'s Am. Compl., ECF No. 61.)

decontaminate following administration of oleoresin capsicum spray ("OC spray") be permitted to proceed.

## I.    BACKGROUND

This action arises from events that occurred on October 11, 2015.  The parties' versions of events are highly disputed.

### A.  Plaintiff's Version of Events

Plaintiff alleges that on the date in question he engaged in a "physical altercation" with Defendant J. Elkins, a corrections officer at RCI, in an area of the prison known as Unit 7-B. (Pl.'s Am. Compl. 2, ECF No. 61.)  According to Plaintiff's Amended Complaint, the altercation ended when an unidentified corrections officer sprayed Plaintiff in the "facial area" with OC spray and placed him in handcuffs.  (*Id.*)  Once restrained, Plaintiff alleges Elkins and Defendant H. Sexton, another corrections officer at RCI, escorted him out of Unit 7-B to a supervisor's office.  (*Id.*)  At this time and throughout the remainder of the relevant time period, Plaintiff alleges he complied with Defendants' orders and that he was not behaving in an aggressive or threatening manner.

Plaintiff alleges that notwithstanding his compliant behavior while en route to the supervisor's office, Elkins and Sexton "physically assaulted [him] by repeatedly hitting [him] in the facial area with there (sic) hands."  (*Id.*)  Defendants Sexton and Elkins then allegedly brought Plaintiff into the supervisor's office where they, along with other unidentified officers, punched Plaintiff again and kicked him "with their feet when [he] fell."  (*Id.*)  Plaintiff alleges that Elkins and Sexton thereafter escorted him to a holding cell despite his request for medical treatment and "water to wash the [OC spray] out of [his] facial area and wounds."  (*Id.* at 3.) According to the Amended Complaint, officers left Plaintiff in the holding cell without medical

treatment or a means to decontaminate for "30 to 45 minutes" before Defendant J. Evans, a sergeant at RCI, supervised Plaintiff's escort to the infirmary. (*Id.*)

Once in the infirmary, according to the Amended Complaint, Evans and Defendant R.N. Winters, a nurse at RCI, began "punching, hitting[,] and kicking" Plaintiff. (*Id.*) Rather than provide medical treatment or decontamination for the OC spray, Plaintiff alleges, Evans and Winters "used that time [in the infirmary] to further assault [him] because of the physical altercation [he] had with Defendant J. Elkins" earlier that day. (*Id.*) According to his Amended Complaint, Plaintiff suffered various physical injuries as a result of Defendants' assaults, including a "black eye that was swollen, a split open forehead, busted nose and split open lip." (*Id.*) At an unidentified later date, Plaintiff was transferred to Southern Ohio Correctional Facility and later to the Ohio State Penitentiary where he remains confined today.

### B. Defendants' Version of Events

Defendants submit that on the date in question, nonparty Tammy Smith, an officer at RCI, verbally confronted Plaintiff in Unit 7-B regarding suspicious activity in his cell. Defendants assert that Plaintiff used aggressive language with Officer Smith, causing her to order him to stand on the wall. Elkins thereafter arrived on the scene and ordered Plaintiff to proceed to the dayroom. Defendants represent that when Elkins attempted to escort Plaintiff to the dayroom, Plaintiff pulled away, prompting Elkins to attempt to restrain him. At that point, a physical altercation ensued between Plaintiff and Elkins, during which Plaintiff punched Elkins in the head "dozens of times." (Defs.' Mot. 3, ECF No. 80.) During the altercation, according to Defendants, Elkins "made multiple thrusts at [Plaintiff] to subdue him." (*Id.*) Ultimately, Sexton arrived on the scene, sprayed Plaintiff with OC spray, and used handcuffs to restrain Plaintiff.

Although Defendants concede that Elkins and Sexton subsequently escorted Plaintiff from Unit 7-B to a supervisor's office, they deny using physical force against Plaintiff at any point after he was restrained and the altercation with Elkins ended. Defendants submit that Elkins and Sexton later brought Plaintiff to a segregation cell, after which Evans escorted Plaintiff to the infirmary where he was examined by Nurse Winters. Nurse Winters noted left eye edema and left forehead edema.

Evans and Winters both deny using physical force against Plaintiff at any time on October 11, 2015, other than Evans placing his hand on Plaintiff's arm while escorting him to the infirmary. Defendants deny that Plaintiff requested medical attention at any point during these encounters and represent that he refused medical treatment once in the infirmary. Defendants further deny that Plaintiff exhibited a need for medical treatment at any point prior to being brought to the infirmary or while in the infirmary. Defendants do not indicate whether, when, or if they provided Plaintiff an opportunity to decontaminate following the administration of OC spray.

Although Defendants concede Plaintiff suffered swelling to his left eye and left forehead and a black eye, they maintain that "the only plausible explanation" for these injuries is that "the left side of [Plaintiff's] face made contact with either the floor or someone's body part (likely Officer Elkins) during the melee" between Plaintiff and Elkins. (Defs.' Mot. 6, ECF No. 80.) Defendants acknowledge, however, that "no particular notable jab [to Plaintiff] can be identified on the video" footage that captured the altercation, which Defendants have submitted to the Court for review. (*Id.*)

**C. Procedural History**

Plaintiff filed this action, moving for leave to proceed *in forma pauperis*, on July 20,

2016.  (ECF No. 1.)  The Court granted his *in forma pauperis* motion, causing Plaintiff's

Complaint to be filed on July 22, 2016.  (ECF No. 3.)  Plaintiff subsequently sought leave to file

an Amended Complaint, which the Court granted, causing his Amended Complaint to be filed on

January 3, 2017.  (ECF No. 61.)  In his Amended Complaint, Plaintiff names four RCI

employees as Defendants, including Officer Sexton, Officer Elkins, Officer Evans, and Nurse

Winters, in both their individual and official capacities.  The Court construes Plaintiff's

Amended Complaint as asserting claims under 42 U.S.C. 1983 for excessive force and deliberate

indifference to serious medical needs in violation of the Eighth Amendment to the United States

Constitution.  Plaintiff seeks compensatory and punitive damages, as well as a declaration that

Defendants' actions violated his constitutional rights.  Plaintiff filed his Motion for Summary

Judgment on October 10, 2017.  Defendants filed their cross Motion for Summary Judgment on

November 1, 2017.  Both motions are now ripe for review.  The Court also screens those claims

upon which Defendants did not move for summary judgment pursuant to 28 U.S.C. § 1915(e).

## II.  MOTIONS FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial

burden of proving that no genuine issue of material fact exists, and the court must draw all

reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air

Wisconsin Airlines Corp*., 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf.

Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's

assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty*., 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986))

### B. Analysis

Plaintiff posits that summary judgment in his favor is proper on each of his claims because the evidence conclusively establishes that Defendants utilized excessive force against him and were deliberately indifferent to his serious medical needs. Defendants assert that they are entitled to summary judgment on Plaintiff's excessive force claims premised upon Defendants' alleged beatings of Plaintiff for three reasons, including because (1) Plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment to the United States Constitution; (2) Plaintiff has adduced no credible evidence that Defendants utilized excessive force against him; and (3) they are entitled to qualified immunity. Defendants have not moved for summary judgment on Plaintiff's Eighth Amendment claims premised upon

Defendants' alleged failure to provide medical care or an opportunity for decontamination following administration of OC spray. The Court considers each of the parties' respective arguments below.

## 1. Plaintiff's Claims Against Defendants in Their Official Capacity

Defendants assert that the Eleventh Amendment bars Plaintiff's claims against them in their official capacity. The undersigned agrees.

The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). A suit against a state official in his or her official capacity is "not a suit against the official but rather is a suit against the official's office," and is therefore "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted).

None of the three exceptions apply here. First, "Ohio has not waived sovereign immunity in federal court." *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Second, "Section 1983 does not abrogate Eleventh Amendment immunity." *Boler*, 865 F.3d at 410 (citing *Will*, 491 U.S. at 66). Finally, *Ex Parte Young* does not operate to save Plaintiff's official capacity claims. The *Ex Parte Young* exception to sovereign immunity allows a plaintiff "to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations, regardless of whether compliance might have an ancillary

effect on the state treasury." *Boler*, 865 F.3d at 412 (internal quotation marks and citation omitted). The exception applies where the plaintiff alleges "'an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Applied here, *Ex Parte Young* is inapplicable because Plaintiff neither alleges any ongoing violations nor seeks any specific injunctive relief in his Amended Complaint. (*See* Am. Compl., ECF No. 61.) Moreover, Plaintiff's subsequent transfer to another institution would render any such claims for prospective injunctive relief moot. *See Sossamon v. Texas*, 131 S.Ct. 1651, 1669–70 (2011) (citations omitted) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *see, e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (inmate's request for injunctive relief moot upon transfer from relevant prison); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (same); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same).

Accordingly, it is **RECOMMENDED** that the Court grant summary judgment in Defendants' favor on Plaintiff's claims against them in their official capacity.

### 2. Plaintiff's Eighth Amendment Claims Against Defendants in Their Individual Capacity

The Court next considers (1) Plaintiff's claims against Defendants Elkins and Sexton for allegedly beating him while en route to the supervisor's office and while he was in the supervisor's office; (2) Plaintiff's claims against Defendants Evans and Winters for allegedly beating him in the infirmary; (3) Defendants' assertion that they are entitled to qualified immunity on the first two sets of claims; and (4) Plaintiff's remaining claims relating to

Defendants' alleged failure to provide him the opportunity to decontaminate following administration of OC spray.

### a. Plaintiff's Excessive Force Claim Against Elkins and Sexton for Punching and Kicking Him

Plaintiff insists that summary judgment in his favor is proper on his claims against Elkins and Sexton for excessive force because the evidence conclusively establishes that these Defendants assaulted him en route to the supervisor's office and while he was in that office. Defendants also seek summary judgment on these claims, insisting that Plaintiff "cannot present any evidence that [Elkins and Sexton] used any force against him after [Plaintiff's] initial assault on Officer Elkins," and argue that any force used during the altercation with Elkins was reasonable and necessary. (Defs.' Mot. 2, ECF No. 80.) For the following reasons, the undersigned concludes that a genuine issue of material fact exists as to whether Elkins and Sexton used excessive force against Plaintiff in violation of the Eighth Amendment.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Whether [a defendant's] alleged conduct constitute[s] excessive force in violation of the Eighth Amendment depends on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Relevant factors in this analysis include "'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *United States v. Bunke*, 412 F. App'x 760, 765 (6th Cir. 2011). A claimant need not establish a

"significant injury" to prove an excessive-force violation. *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). The Supreme Court, however, has cautioned that the extent of the injury is still meaningful in the analysis:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id.* at 7, 112 S.Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid.* (quoting *Whitley*, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id.*

Here, both parties have adduced sufficient evidence to demonstrate the existence of a genuine issue of material fact as to whether Elkins and Sexton used excessive force against Plaintiff while en route to the supervisor's office and while Plaintiff was in the supervisor's office.

For his part, Plaintiff first submits a declaration from former RCI inmate Bryshawn Dodds in support of his claim. (Pl.'s Mot. Ex. 1, 47-48, ECF No. 70-1.) According to the declaration, Dodds was also involved in the physical altercation that resulted in Plaintiff being escorted to the supervisor's office on October 11, 2015. Dodds declares that he and Plaintiff both "were taken to the Capt. Office" following the altercation, and that they were both "beat on the way there." (*Id.* at 47.) Dodds goes on to state that "[w]hen we got to the Capts. Office [Plaintiff] was taken in first," and Dodds "started hearing [Plaintiff] yelling in pain." (*Id.* at 47-

48.)  Dodds further declares that he saw Plaintiff's face before the two were escorted to the supervisor's office and it exhibited no "scars or bleeding," but when Plaintiff emerged from the supervisor's office, "he had bleed (sic) and black eyes."  (*Id.*)

As further support for his claim, Plaintiff points to a photograph taken after he was transported to Southern Ohio Correctional Facility, which depicts obvious injuries to Plaintiff's left eye, as well as Nurse Winters' medical report, which documents swelling to Plaintiff's left eye and left forehead.  Plaintiff maintains that the video footage of his altercation with Elkins shows there was no physical contact with his face during that encounter, and argues that this demonstrates the facial injuries must have occurred later, as he alleges.[2]

Defendants insist that the foregoing evidence fails to create a genuine issue of material fact.  First, Defendants submit verified interrogatory answers and an incident report from Elkins and Sexton in which they both deny utilizing force against Plaintiff after Plaintiff was restrained following his altercation with Elkins.  Plaintiff's facial injuries, they contend, were "most certainly sustained during the video-taped incident," where Plaintiff "wrestl[ed] with Defendant Elkins."  (Defs.' Op. 6, ECF No. 86.)  Defendants maintain that the force used during that altercation was a reasonable and "necessary response to [Plaintiff's] minutes long assault on Elkins where he punched him in the head dozens of times."  (Defs.' Mot. 10, ECF No. 80.)

Defendants urge the Court to disregard Dodds' declaration as unsupported by the record.

---

[2] Plaintiff also cites to his Amended Complaint to support his claim; however, at the summary judgment stage, Plaintiff may not rely on the allegations in his Amended Complaint to substantiate his claims.  *See Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 561 (6th Cir. 2011).  A verified complaint, signed under penalty of perjury, may be considered as an affidavit would be.  *El Bey v.* Roop, 530 F.3d 407, 414 (6th Cir. 2008).  Plaintiff's Amended Complaint was not verified, however, so the Court may not assign it any weight.  The Court invited Plaintiff to submit proper, admissible evidence in further support of his Motion (ECF No. 98), but he failed to do so.

Specifically, Defendants insist that although Dodds "insinuates that he and [Plaintiff] were escorted together" to the supervisor's office, the officer who escorted Dodd swore that they followed "far behind" Plaintiff such that Plaintiff was outside of Dodds' view during the escort. (Defs.' Op. 11, ECF no. 86.) Defendants also point to statements by nonparty Officer Cash indicating that he escorted Dodds not to the supervisor's office as Dodds maintains, but rather straight to the infirmary, foreclosing any possibility that Dodds could have seen or heard Plaintiff being beaten as he contends.

The undersigned concludes that the foregoing evidence creates a genuine issue of material fact as to whether Elkins and Sexton punched and kicked Plaintiff while en route to the supervisor's office and while Plaintiff was in that office, as Plaintiff alleges. Although Defendants insist that the force used against Plaintiff during his altercation with Elkins was reasonable, Plaintiff's claims arise not from force used during that altercation, but rather alleged force used *after* that altercation when Plaintiff was restrained, compliant, and behaving in a non-aggressive, non-threatening manner. At the same time, Defendants deny that any force was used after the altercation with Elkins ended. With respect to these conflicting versions of events, Dodds, on the one hand, and Elkins, Suxon, and Cash, on the other, provide contradictory statements that prevent summary judgment for either party.

Further, despite Defendants' contrary insistence, the undersigned finds nothing in the record that conclusively forecloses Dodds' version of events. In fact, although Defendants maintain that Dodds was escorted to the supervisor's office "far behind" Plaintiff preventing him from witnessing any assault on Plaintiff, the video evidence submitted to the Court shows Officer Cash escorting Dodds out of Unit 7-B closely behind Plaintiff. Although a jury may ultimately be persuaded by Officer Cash's testimony that Dodds became uncooperative once

outside the camera's view, causing them to fall behind Plaintiff, a jury, not this Court, must make that determination.

Finally, contrary to Defendants' position, the video footage construed in the light most favorable to Plaintiff fails to conclusively establish that Plaintiff sustained the facial injuries during his altercation with Elkins. The undersigned agrees with Defendants that "no particular notable jab can be identified on the video" that would account for Plaintiff's injuries. (Defs.' Mot. 6, ECF No. 80.) This, coupled with the additional evidence identified above and Dodds' statement that Plaintiff had no visible injuries to his face when he was escorted from Unit 7-B, is sufficient for Plaintiff's claim to survive summary judgment. Accordingly, it is **RECOMMENDED** that both Plaintiff's and Defendants' Motions for Summary Judgment be **DENIED** as to Plaintiff's Eighth Amendment claims against Elkins and Sexton for excessive use of force.

### b. Plaintiff's Excessive Force Claim Against Evans and Winters for Punching and Kicking Him in the Infirmary

The undersigned concludes, however, that summary judgment in favor of Defendants is proper on Plaintiff's claim that Evans and Winters utilized excessive force against Plaintiff by punching and kicking him while he was in the infirmary. Aside from the allegations in his unverified Amended Complaint, which the Court cannot consider for purposes of summary judgment, the only evidence Plaintiff adduces in support of his claim is a declaration from Dodds stating that Plaintiff told Dodds he was beaten in the infirmary. (Pl.'s Mot. Ex. 1, 47, ECF No. 70-1.) Plaintiff's statement to Dodds constitutes hearsay. *See* Fed. R. Evid. 801(c)(1). Plaintiff has offered the statement in an attempt to prove the truth of the matter asserted, namely, that he was beaten while in the infirmary. *See* Fed. R. Evid. 801(c)(2). Plaintiff's statement to Dodds is

*prima facie* inadmissible for that purpose. Fed. R. Evid. 802; *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.'" (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (alteration in original))). Accordingly, because Plaintiff has failed to adduce admissible evidence in support of his claim that Evans and Winters beat him in the infirmary, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED** as to this claim.

### c. Qualified Immunity

The Court must next consider Defendants' argument that they are entitled to qualified immunity. Given the conclusion that summary judgment is proper on Plaintiff's official capacity claims and his excessive force claims against Evans and Winters for allegedly beating him in the infirmary, the undersigned finds it unnecessary to consider whether qualified immunity applies to those claims. The undersigned recommends that the Court decline to grant qualified immunity with regard to Plaintiff's excessive force claims against Elkins and Sexton.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified

immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citations omitted). The determination of whether a government official is entitled to qualified immunity involves two inquiries. *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010). "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (internal quotation marks and citations omitted). The Court need not consider these inquiries sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

In this case, the undersigned concludes that Elkins and Sexton are not entitled to qualified immunity on Plaintiff's excessive force claim premised upon his allegations that they punched and kicked him en route to and while he was in the supervisor's office. First, it is undisputed that the right to be free from excessive force was clearly established at the time of the alleged violation. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (citations omitted) ("This circuit has held that the right to be free from excessive force . . . is a clearly established right for purposes of the qualified immunity analysis."). Second, as set forth above, Plaintiff's version of the facts, if taken in a light most favorable to Plaintiff, demonstrates Elkins and Sexton utilized excessive force in violation of the Eighth Amendment. Thus, because a jury must resolve the factual disputes before the Court can decide whether Defendants utilized excessive force, qualified immunity is not appropriate.

Defendants' arguments to the contrary are unpersuasive. Defendants maintain that they are entitled to qualified immunity because "any reasonable correctional officer would believe it lawful to subdue an inmate who repeatedly punched a fellow officer." (Defs.' Mot. 14, ECF No.

80.)  Defendants' assertion lacks merit because it is premised upon their own disputed version of the facts, namely, that Defendants' use of force was confined to Plaintiff's altercation with Elkins.  For purposes of this qualified immunity analysis, however, the Court must "view[] the facts in the light most favorable to" Plaintiff, as with any motion for summary judgment.  *Miller*, 606 F.3d at 247.  Where, as here, the reasonableness of the force utilized turns upon which party's version of the facts is accepted, a court should not grant summary judgment on qualified immunity grounds.  *See Murray-Ruhl v. Passinault*, 246 F. App'x 338, 343 (6th Cir. 2007) (internal quotation marks and case citation omitted) ("[I]f the legal question of [qualified] immunity is completely dependant upon which view of the facts is accepted by the jury, the district court should not grant [qualified] immunity . . . .");  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (citations omitted) (explaining that where "qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability").

For these reasons, it is **RECOMMENDED** that Defendants' request for qualified immunity be **DENIED**.

### d.  Plaintiff's Remaining Claims

Plaintiff further alleges that Defendants violated his constitutional rights by denying him prompt medical care to treat the effects of OC spray and by failing to promptly permit him to decontaminate after officers administered OC spray.  Importantly, Plaintiff does not allege that Defendants' use of OC spray itself constitutes excessive force (nor does the evidence suggest that it does).  Rather, Plaintiff's claim arises solely from Defendants' alleged failure to provide prompt medical treatment and an opportunity to decontaminate following the use of OC spray, despite Plaintiff's requests.

Defendants did not move for summary judgment on this claim.  Rather, Defendants

16

addressed this claim for the first time in their reply brief only after Plaintiff raised their failure to move on this claim in his opposition brief, even though Plaintiff moved for affirmative summary judgment on this claim nearly one month before Defendants filed their Motion.[3]  This Court has held that a party moving for summary judgment "is confined to those grounds raised in its motion and initial memorandum in support in its attempt to obtain summary judgment."  *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) (quoting *United Tel. Co. of Ohio v. Ameritech Servs., Inc.*, No. 2:10-cv-249, 2011 WL 53462, at *3 n.2 (S.D. Ohio Jan. 7, 2011) ("[A] reply brief is not the proper place to raise an issue for the first time.")); *see also Books-A-Million, Inc. v. H&H Enter.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) (denying the plaintiff's request for summary judgment on various of the defendant's affirmative defenses where the plaintiff raised the request for the first time in a reply brief).

Because Defendants failed to move for summary judgment on this claim, it is **RECOMMENDED** that their request for summary judgment made for the first time in their reply brief be **DENIED**.  As for Plaintiff's request for affirmative summary judgment on this claim, the undersigned notes that Plaintiff has failed to submit admissible evidence in support of his claim, despite the Court's invitation for him to do so (ECF No. 98), and instead relies solely on his unverified Amended Complaint to support his claim.  Because the Court cannot consider Plaintiff's unverified Amended Complaint in deciding summary judgment, it is further **RECOMMENDED** that Plaintiff's Motion for Summary Judgment on this claim also be **DENIED**.

### III.  28 U.S.C. § 1915(e) SCREEN

---

[3]Nor did Defendants address this claim in their opposition to Plaintiff's Motion for Summary Judgment.

The Court's inquiry does not end there. Plaintiff proceeds in this action *in forma pauperis*, which places the Court under a continuing duty to dismiss claims if at any time it determines the claims fail to state a claim on which relief may be granted. Consistent with that duty, the undersigned considers whether Plaintiff's remaining claims fail to state a claim.

### A. 28 U.S.C. § 1915(e) Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \*     \*     \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

**B. Plaintiff's Claims Upon Which Defendants Did Not Seek Summary Judgment**

Here, Plaintiff alleges that he requested medical treatment and "water to wash the [OC spray] out of [his] facial area and wounds," but that he was denied his request and instead placed in a segregation cell without access to water. (Am. Compl. 3, ECF No. 61.) After "30-45 minutes," according to the Amended Complaint, officers brought Plaintiff to the infirmary but "did not give [him] medical treatment" for the OC spray while he was there. (*Id.*) Plaintiff alleges that rather than treat the effects of the OC spray, Defendants Evans and Winters "used that time to further assault [him] because of the physical altercation [he] had with Defendant J. Elkins."[4] (*Id.*)

Having considered these allegations, the undersigned concludes that Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to serious medical needs arising from Defendants' alleged failure to provide immediate medical attention to treat the effects of OC spray. Plaintiff has, however, stated an Eighth Amendment claim for excessive force arising from Defendants' alleged failure to allow him to promptly decontaminate following the use of OC spray.

**1. Deliberate Indifference to Serious Medical Needs Claim**

This Court analyzes the failure to provide medical treatment as a claim for deliberate indifference to serious medical needs. It is well established that "[t]he Eighth Amendment

---

[4]Although the Court is confined to the allegations contained in Plaintiff's Amended Complaint for purposes of considering whether Plaintiff has stated a claim, the undersigned notes that Plaintiff elaborates in his briefing that the cell in which he was placed was poorly ventilated and had no sink, and that his hands were cuffed behind his back the whole time he was in there, leaving him "burning from the OC spray effects and [i]ncapable to help [himself]." (Pl.'s Op. 14, ECF No. 88.) Plaintiff further alleges that he requested medical attention to treat the effects of the OC spray, but Defendants "ignored" his pleas "as mucus hung down [his] nose and tears covered [his] eyes." (Pl.'s Mot. 12, ECF No. 70.)

forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting

with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625

F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference

to serious medical needs "has both objective and subjective components." *Alspaugh v.

McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth

Circuit has explained:

> The objective component mandates a sufficiently serious medical need.
> [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The
> subjective component regards prison officials' state of mind. *Id.* Deliberate
> indifference "entails something more than mere negligence, but can be satisfied
> by something less than acts or omissions for the very purpose of causing harm or
> with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks
> and citations omitted). The prison official must "be aware of facts from which the
> inference could be drawn that a substantial risk of serious harm exists, and he
> must also draw the inference."

*Id.* at 896 (internal quotation marks and citation omitted); *Barnett*, 414 F. App'x at 787–88; *see*

*also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar

to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the

official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a

substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk."

(citations omitted)).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of
> medical care and those cases where the claim is that a prisoner received
> inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th
> Cir. 1976). Where a prisoner alleges only that the medical care he received was
> inadequate, "federal courts are generally reluctant to second guess medical
> judgments." *Id.* However, it is possible for medical treatment to be "so woefully
> inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If

the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). "In examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original). Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

Moreover, the effects of OC spray, standing alone, fail to indicate an objective, "sufficiently serious" medical need giving rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to decontaminate. *See Payne v. Gifford*, No. 1:16-cv-514, 2017 WL 4329631, at *5 (S.D. Ohio Sept. 5, 2017), *adopted*, 2017 WL 431543 (S.D. Ohio Sept. 28, 2017) (finding an absence of a sufficiently serious medical need to treat the effects of OC spray where the plaintiff was permitted to adequately decontaminate following its use); *see also McDougald v. Esham*, No. 1:16-cv-497, 2018 WL 1010214, at *31-32 (S.D. Ohio Feb. 21, 2018), *adopted*, No. 1:16-cv-514 at ECF No. 78 (S.D. Ohio June 15, 2018) (secondhand contact with OC spray standing alone failed to give rise to a "'sufficiently serious' medical need as required for an Eighth Amendment violation," where the plaintiff had soap and water available in his cell for decontamination).

Here, Plaintiff has failed to allege a serious medical need beyond the normal effects of OC spray. Nor has he alleged any detrimental physical effect from the delay in or lack of

medical care to treat the effects of OC spray. Therefore, the undersigned concludes that Plaintiff

has failed to state a claim for deliberate indifference to serious medical needs arising from the

alleged delay in or lack of medical treatment. It is therefore **RECOMMENDED** that this claim

be **DISMISSED** pursuant to § 1915(e).

> ### 2. Excessive Force Claim Premised Upon Defendants' Alleged Failure to Permit Decontamination

The Court must next consider whether Defendants' alleged failure to allow Plaintiff

access to water or other supplies to decontaminate from the OC spray gives rise to an Eighth

Amendment claim for excessive force. Construed liberally, Plaintiff asserts this claim against

Defendants Elkins and Sexton for allegedly placing and leaving him in a segregation cell for

thirty to forty-five minutes without an opportunity to decontaminate, as well as Defendants

Evans and Winters for failing to allow him to decontaminate while in the infirmary.

The standard for an Eighth Amendment excessive force violation is set forth above. (*See*

pp. 9-10, *supra*.) Applying that standard, this Court has held that prison officials' failure to

allow an inmate to properly decontaminate after the use of OC spray can give rise to an Eighth

Amendment violation. *See*, *e.g.*, *Payne v. Gifford*, No. 1:16-cv-514, 2016 WL 4992021, at *4-5

(S.D. Ohio June 30, 2016) (ruling, within the context of an initial screen, that the plaintiff stated

a claim where the defendants allegedly "failed to decontaminate" the plaintiff "after he was

maced, leaving him to suffer the effects of the pepper spray for a prolonged period of time");

*Easley v. Little*, No. 1:14-cv-891, 2015 WL 247929, at *3 (S.D. Ohio Dec. 22, 2014) (finding the

plaintiff's Eighth Amendment claim survived initial screen where the defendants allegedly

"refus[ed] to allow [the plaintiff] to remove the mace from his eyes and mouth or to obtain

medical decontamination assistance immediately after he was maced"), *adopted*, 2015 WL

247929, at *3 (S.D. Ohio Jan. 20, 2015); *McDougald v. Bear*, No. 1:17-cv-124, 2017 WL
5178764, at *15 (S.D. Ohio Nov. 7, 2017), *adopted*, 2017 WL 5990121 (S.D. Ohio Dec. 4, 2017)
(concluding that the plaintiff stated an Eighth Amendment claim where he "allege[d] he was
placed in a cell that had no running water and that he notified defendants of his difficulty
breathing after the pepper spray application, but he was denied 'decontamination'").[5]

    The Sixth Circuit has likewise indicated that the failure to allow an inmate to
decontaminate after administering OC spray can give rise to an Eighth Amendment claim.  *See
Peoples v. Bauman*, No. 16-2006, 2017 WL 7050280, at *15 (6th Cir. Sept. 5, 2017) (reversing
grant of summary judgment on Eighth Amendment claim where evidence demonstrated that the
plaintiff was not permitted to decontaminate for ten days following the administration of OC
spray) (citing *Danley v. Allen*, 540 F.3d 1298, 1308 (11th Cir. 2008) ("Although less common
than the direct application of force, subjecting a prisoner to special confinement that causes him
to suffer increased effects of environmental conditions—here, the pepper spray lingering in the
air and on him—can constitute excessive force.")).

    Based on the foregoing authority, the undersigned concludes that Plaintiff has stated a
viable Eighth Amendment excessive force claim premised upon Defendants' alleged failure to
allow him access to water or other means to decontaminate following the administration of OC
spray.  Although it is unclear how long Plaintiff suffered the effects of the OC spray before being
given the opportunity to decontaminate (the Amended Complaint only indicates that it was
something more than "30-45 minutes") or whether the circumstances will ultimately lead a jury
to conclude that a violation of the Eighth Amendment occurred, Plaintiff has met the pleading

---

[5] The undersigned notes that in *McDougal*, this Court analyzed the plaintiff's claim as one for
deliberate indifference to serious medical needs.  This distinction, however, makes no difference
to the analysis here.

standard for this claim. Accordingly, having considered the viability of this claim pursuant to its continuing duty under 28 U.S.C. § 1915(e), the undersigned **RECOMMENDS** that Plaintiff be permitted to proceed with this claim.

## IV. RECOMMENDATIONS

For the reasons set forth above, it is **RECOMMENDED** that:

Plaintiff's Motion for Summary Judgment be **DENIED** in its entirety;

Defendants' Motion for Summary Judgment be **GRANTED** as to (1) Plaintiff's claims against them in their official capacity, and (2) Plaintiff's Eighth Amendment claims against Evans and Winters for allegedly beating Plaintiff in the infirmary;

Defendants' Motion for Summary Judgment be **DENIED** as to (1) Plaintiff's Eighth Amendment claims against Evans and Winters for allegedly beating Plaintiff en route to the supervisor's office and while Plaintiff was in that office; (2) Defendants' request for qualified immunity; and (3) Defendants' request, made for the first time in their reply brief, for summary judgment on Plaintiff's Eighth Amendment claims for failure to provide prompt medical treatment and an opportunity for decontamination following the use of OC spray;

Plaintiff's claim for deliberate indifference to serious medical needs be **DISMISSED** pursuant to § 1915(e); and

Plaintiff's Eighth Amendment claim premised upon Defendants' alleged failure to permit him to promptly decontaminate following the use of OC spray be permitted to proceed.

## V. PROCEDURE FOR OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

25

supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.


 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE